**38 So.2d 151**

### OSBORNE v. MOSSLER ACCEPTANCE CO. et al.

**No. 38748.**

Dec. 13, 1948.

J. S. Pickett, of Many, for plaintiff-relator.

Simms & Jackson, of Leesville, for defendant-respondent.

MOISE, Justice.

We granted a writ of certiorari in this case so that a review could be had on the judgment of the Court of Appeal, First Circuit, awarding to plaintiff the sum of $257.50, representing $132.50 as damages, and $125 as attorney's fees, this amount to apply as an off-set of the judgment on the reconventional demand for $1,363.50, plus interest and attorney's fees, granted in favor of the defendant. 31 So.2d 452.

The plaintiff is seeking damages against the Mossler Acceptance Company because of the unlawful seizure of his house trailer by executory process, the Court of Appeal

having dismissed the suit and declared the executory process improperly issued, as the Texas chattel mortgage under which the seizure was made was not an authentic act (La.App., 14 So.2d 492); and, since this suit was instituted because of the illegal seizure, it is necessary to briefly summarize the facts of the entire litigation.

The record shows that on September 18, 1942, at Karnack, Texas, plaintiff purchased a house trailer and executed as part payment, his promissory note for $1,363.50, bearing 10% interest from maturity and payable to the order of George F. Stephens, in monthly installments as therein specified, at the office of the Mossler Acceptance Company, Houston, Texas. An endorsement appears on the back of the note whereby Stephens transferred it to the Mossler Company on the same date. In connection with this transaction, plaintiff executed a chattel mortgage on the trailer, to secure the note. This instrument contained the stipulation that the property was not to be moved from the county or out of the State of Texas without the mortgagee's written consent. The contract of sale, the note, and the chattel mortgage were made and executed in the State of Texas by and between Texas citizens. Since payments were not made as specified by the note, the Mossler Company caused an order of executory process to issue against plaintiff and seized the trailer which was then in plaintiff's possession and located in Hornback, Louisiana. The Court

of Appeal declared the writ of seizure to have been illegal, since the chattel mortgage was not by authentic act, and dismissed the writ of seizure and sale. 14 So.2d 492. Thereupon, two separate suits were filed against the Mossler Company, one on behalf of plaintiff's wife for damages for alleged humiliation, etc., and the other, by the plaintiff (the proceeding now before us) for damages claimed to have been suffered because of the illegal seizure. In answer to these suits, the Mossler Company filed a reconventional demand for the amount of the note given by plaintiff to George F. Stephens and assigned to defendant in the amount of $1,363.50, plus 10% interest and 15% attorney's fees. Judgment was rendered in the district court in plaintiff's favor for damages of $410.75; and there was judgment also in favor of the Mossler Company against the plaintiff on the reconventional demand for $1,363.50, with 10% interest and 15% attorney's fees, recognizing the lien and privilege of the defendant on the trailer, the amount of the judgment in favor of the plaintiff to be allowed as an off-set against the judgment in favor of the defendant on the reconventional demand. The wife's suit was dismissed for want of sufficient evidence. Appeals were taken on both suits to the Court of Appeal. That court affirmed the dismissal of the wife's suit and reduced the judgment of award for damages in Osborne's favor from $410.75 to $257.50. The judgment in favor of defendant in the sum of $1,363.50, plus interest, etc., on the

reconventional demand was affirmed. 31 So.2d 452. A rehearing was denied and we granted a writ of certiorari and now only plaintiff Osborne's suit is before us for review.

It is plaintiff's contention that the note and mortgage were altered as to the payments after he signed it; however, he admits he signed the note and mortgage and has failed to prove that the present holder had knowledge of any defects or irregularities in the note and mortgage. The evidence shows that before September 25, 1942, and prior to the due date of the first instalment of the note, plaintiff was informed by the defendant, Mossler Company, that it held his note, secured by the chattel mortgage. It has also been shown that plaintiff had received at that time a schedule of payments in accordance with the note. It is clear, therefore, that the defendant acquired the note before maturity and for a valuable consideration.

The contract was made in the State of Texas, to be performed in that State; and the note was to bear interest at the rate of 10% from maturity. There is no proof in the record of the legal rate of interest in the State of Texas. In the absence of such proof of the foreign law, the law of Louisiana must be applied. Barlow v. Fife, 172 La. 176, 133 So. 436. The amount of interest to be allowed herein must, therefore, be determined under our law.

Article 2924 of the Revised Civil Code reads:

"Interest is either legal or conventional. Legal interest is fixed at the following rates, to-wit:

"At five per cent on all sums which are the object of a judicial demand. Whence this is called judicial interest;

"And on sums discounted at banks at the rate established by their charters.

"*The amount of the conventional interest can not exceed eight per cent.* The same must be fixed in writing; testimonial proof of it is not admitted in any case.

"Except in the cases herein provided, if any person shall pay on any contract a higher rate of interest than the above, as discount or otherwise, the same may be sued for and recovered within two years from the time of such payment.

"The owner or discounter of any note or bond or other written evidence of debt for the payment of money, payable to order or bearer or by assignment, shall have the right to claim and recover the full amount of such note, bond or other written evidence of debt, *and all interest not beyond eight per cent per annum interest* that may accrue thereon, notwithstanding that the rate of interest or discount at which the same may be or may have been discounted has been beyond the rate of eight per cent per annum interest or discount; but this provision shall not apply to the banking institutions of this State in operation under existing laws.

"*The owner of any promissory note, bond or other written evidence of debt for the payment of money to order or bearer or transferable by assignment shall have the right to collect the whole amount of such promissory note, bond or other written evidence of debt for the payment of money, notwithstanding such promissory note, bond or other written evidence of debt for the payment of money may include a greater rate of interest or discount than eight per cent per annum; provided, such obligation shall not bear more than eight per cent per annum after maturity until paid.*

"Provided, however, where usury is a defense to a suit on a promissory note or other contract of similar character, that it is permissible for the defendants to show said usury whether same was given by way of discount or otherwise, by any competent evidence." (Italics ours.)

Usury was not urged as a defense to this suit in the district court nor in the Court of Appeal. However, during the oral argument, this Court questioned counsel for defendant as to whether or not the promissory note involved provided for usurious interest. An examination of the Louisiana statutes reveals that under the provisions of Act No. 291 of 1855, if a contract was usurious, the penalty was that of forfeiture of the entire interest. The Court of Appeal, on rehearing, in Clark v. Harvey, 1912, 9 Orleans App. 277, 278 stated:

"Act No. 291 of 1855, amending Article 2924, R.C.C. provides that the amount of

the conventional interest should not exceed eight per cent under pain of forfeiture of the entire interest.

"But Act No. 68 of 1908, amending the same article and practically redrafting it, omitted the penalty of the Act of 1855, and contains a repeal of all conflicting legislation.

"This amendment took the place of the pre-existing article, which thereupon ceased to exist and became suspended by the amendment. * * *

"We think the rate of interest properly reducible to the highest rate allowed for conventional interest by our statute."

From a reading of the codal article, and particularly by reason of the facts herein stated, the rate of interest of 10% should be reduced to 8%, the highest rate of conventional interest allowable under Louisiana law.

■ Under the finding of facts and the law, the question of damages due plaintiff will now be considered. The seizure and sale were illegal because the foreclosure was by executory process, contrary to Louisiana law in the absence of an authentic act.

■■ The contract signed by the plaintiff imposed the following conditions and covenants: (a) That there should be no default in the installment payments; (b) that the trailer must not be moved from the State or county wherein the mortgage was given, without the consent of the vendor; (c) that if either of these contingencies happen, the vendor has a right to declare the entire debt due, and make demand; and (d) the debtor agreed to surrender the trailer voluntarily to the vendor. This chattel mortgagor, plaintiff, failed to make the proper installment payments and also moved the property out of the State of Texas, without the permission of the mortgagee defendant. While he was able to take advantage of a technicality of Louisiana law, the defendant, nevertheless, was attempting to collect on a valid contract and was acting in good faith. Plaintiff asks for damages for the humiliation, pain and embarrassment occasioned by defendant's wrong act, in addition to actual pecuniary loss alleged to have been sustained. Defendant urges that plaintiff has failed to prove his claims and his suit for damages should be dismissed. The writ of review in this case was issued at the instance of the plaintiff only. The defendant did not apply for a writ of review or join in the application to review the judgment of the Court of Appeal. It is well settled that in reviewing a judgment of the Court of Appeal, at the instance of one of the parties to the suit, we will not amend the judgment to his prejudice and to the advantage of the party who has not complained. Therefore, the judgment of this court will be confined to the complaints of the plaintiff at whose instance the review was granted. Washington v. Holmes & Barnes, Ltd., et al., 200 La. 787, 9 So.2d 35.

In support of his argument for damages, counsel for the plaintiff cites the case of Saia v. Phœnix Building and Homestead Association, 182 La. 844, 162 So. 640. We are unable to find the analogy claimed by plaintiff's counsel. In the cited case, the defendant in executory or executory process, who became the plaintiff in the damage suit which followed, *was not the debtor of the seizing creditor, the homestead.* The award of $750 in damages was pitched on an unwarranted and unlawful seizure of her property when she was at no time the debtor of the homestead association. In the case before us the plaintiff is a *debtor* of the Mossler Company on his signed promissory note, secured by the chattel mortgage, which he also signed, in the full sum of $1,363.50, plus interest at 10% from date of maturity and 15% attorney's fees. The debt was due and the creditor sought to collect by executory process, thus making the plaintiff in this suit the defendant in execution.

In Oxford v. Colvin, 134 La. 1094, 64 So. 919, the sheriff seized property claimed to be a homestead and did so by executory process. The debtor therein engaged the services of an attorney and sued out an injunction on the ground that the property was exempt. The injunction was sustained, the seizure released, the Supreme Court holding:

"As relates to attorneys' fees and damages claimed by plaintiff in injunction, we do not think that in this case the plaintiff in injunction is entitled to either." 134 La. at page 1098, 64 So. at page 921.

In Fallin v. J. J. Stovall & Sons (On Rehearing) 141 La. 220, 234, 74 So. 911, 915, 916, there was a seizure and execution which was enjoined by defendant debtor. In the matter of damages, the court held:

"As to the damages for attorney's fees, such are not allowed when the plaintiff in injunction is the defendant in execution."

See, also, Chappuis v. Preston, 28 La. Ann. 729; Townsend v. Fontenot, 42 La. Ann. 890, 8 So. 616; and Jackson v. Bouanchaud, 178 La. 26, 150 So. 567.

In the case now before us, there was no injunction by which the seizure was released but merely an appeal from the seizure. The same result could have been accomplished by obtaining an injunction against the sale of the property by the sheriff under the writ of seizure and sale.

Under the circumstances of this case, and in the light of the foregoing authorities, the award for attorney's fees and damages made by the Court of Appeal will not be disturbed.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, in favor of the plaintiff is affirmed; and the judgment in favor of the defendant on the reconventional demand is hereby amended and modified to award eight per cent. (8%) interest from date of maturity, and in all other respects the judgment is affirmed; plaintiff to pay all costs.

O'NIELL, C. J., concurs in the reducing of the interest to 8% but otherwise dissents.

McCALEB, Justice (dissenting in part).

I concur in the ruling which reduces the interest recoverable on the reconventional demand to 8% but I am in utter disagreement with the other conclusions of the majority.

The principal question presented in this case is whether a plaintiff, whose property has been seized under an admittedly illegal writ of executory process, may recover damages for the mental anguish, humiliation and inconvenience suffered by him as a consequence of the unlawful act.

The Court of Appeal approved plaintiff's recovery for attorney's fees and monetary losses resulting from the illegal seizure of the house trailer but, paradoxically, refused to allow redress for the vexation, humiliation and embarrassment sustained by him. The reason given by the Court for the denial was that such damages will not be allowed where plaintiff is the defendant's debtor and defendant has proceeded (though illegally) in good faith. See 31 So.2d 452, 455. The writ of review was granted on plaintiff's application for the purpose of determining the correctness of that conclusion of the Court of Appeal as well as to consider whether defendant was entitled to recover 10% interest on its claim in reconvention.

The majority opinion, as I read it, fully sustains the resolution of the Court of Appeal that damages for humiliation, inconvenience, etc. are not recoverable in actions ex delicto for illegal seizure of property where it appears that the seizing creditor was in good faith and that the debt for which the process issued was due and owing. Indeed, the opinion goes a step farther and holds in effect that plaintiff is wholly remediless [1] and authorities are cited which are said to support this view.

The cases cited by the majority are not apposite and the reasoning upon which the conclusion is predicated is of questionable validity. But, above all, the opinion ignores the prior jurisprudence to the contrary and, thus, overrules that jurisprudence by indirection.

Initially, it is pertinent to consider whether there is any sound basis for the majority ruling. Is there any logic in saying that a plaintiff should be denied damages for the illegal seizure of his property at defendants instance because defendant was not actuated by malice and plaintiff is a

---

[1] The opinion recognizes that, since the defendant did not apply for a writ of certiorari, this court cannot reverse the allowance to plaintiff for attorney's fees and monetary losses. In view of the conclusion that a damage suit cannot be maintained under the circumstances appearing here, it is evident that, if defendant had applied for a writ, the entire award of the Court of Appeal would have been disallowed.

debtor? I confess my inability to find a fitting reason—for, surely, a tort has been committed and neither plaintiff's indebtedness nor defendant's lack of malice has any legal significance as an excuse for the wrong, although it might affect the extent of the damage.

This court has never heretofore approved of such a proposition. Conversely, the decision in the case at hand effectively overrules the case of Haas v. Buck, 182 La. 556, 162 So. 181, 183, which is much weaker from plaintiff's standpoint than the instant case.

The salient facts of Haas v. Buck were that Buck, as trustee of certain insurance companies, brought a suit against Haas on a promissory note. The latter answered and, after a trial on the merits, judgment was rendered in Buck's favor. After rendition of the judgment but before the expiration of three days, Buck caused execution to issue prematurely and seized property belonging to Haas. Within the three day period from rendition, Haas applied for a new trial. The application was overruled and Haas did not appeal from the judgment or enjoin the seizure. Later, the property was sold to satisfy the judgment. During the interim, however, Haas brought a suit sounding in damages for the premature seizure of his property under the judgment. Buck filed an exception of no right or cause of action which was sustained in the lower court. On appeal, this court reversed the judgment and remanded the case for trial on its merits, holding that:

"There can be no doubt that an action for damages arises from the wrongful seizure of property. Civ.Code, art. 2315; Durbridge v. Wentzel, 17 La.Ann. 20. Such an action accrues at the moment of the levy, and is not postponed until a final determination of the litigation involving its validity. Duperron v. Van Wickle, 4 Rob. 39, 39 Am.Dec. 509.

"At the time this suit was instituted, plaintiff had already suffered some damages from the violation of his rights, if from nothing more. Plaintiff's failure to enjoin the seizure or to appeal suspensively from the judgment under which it was levied, cannot destroy his cause of action."

The court did not say in the Haas case (nor has it ever said before) that Buck's good faith or the fact that Haas owed the debt affected the cause of action. And yet, there, the issuance of the fi. fa. was merely premature as Haas' motion for a new trial was overruled, the seizure sustained and the property sold to satisfy the judgment.

The decisions cited in the main opinion do not sustain the view that damages are not recoverable for illegal seizure where plaintiff is the debtor of the seizing creditor and the latter acts in good faith. Those cases are Oxford v. Colvin, 134 La. 1094, 64 So. 919; Fallin v. J. J. Stovall & Sons (on rehearing), 141 La. 220, 234, 74 So. 911, 915; Chappuis v. Preston, 28 La.Ann.

729; Townsend v. Fontenot, 42 La.Ann. 890, 8 So. 616 and Jackson v. Bouanchaud, 178 La. 26, 150 So. 567 and are authority only for the proposition that attorney's fees are not a recoverable item of damage for securing an injunction against an illegal seizure if the seizing creditor is in good faith and the plaintiff in the injuncton is the defendant in execution. This rule is now well established—although, as pointed out in Jackson v. Bouanchaud, supra (where most of the prior jurisprudence is cited and discussed), there has been considerable conflict in the decisions. However, the underlying reason why attorney's fees are ordinarily not recoverable stems from the general rule that these items are not legally considered to be elements of damage, in the absence of statute, and not because the seizing creditor is in good faith or because the plaintiff owes the debt.[2]

To buttress its holding in this case, the majority relies heavily on Oxford v. Colvin, supra, and quotes the following statement from that case:

"As relates to attorneys' fees and *damages* claimed by plaintiff in injunction, we do not think that in this case the plaintiff in injunction is entitled to *either*." (Emphasis mine.)

A reading of the opinion in Oxford v. Colvin will readily exhibit that the damages to which the court was referring were not

actual damages (as claimed by plaintiff herein) but punitory damages[3] which are not allowable under our law. See McCoy v. Arkansas Natural Gas Co., 175 La. 487, 143 So. 383, 85 A.L.R. 1147.

I respectfully dissent.

---

[2] The Court of Appeal erred in permitting recovery of attorney fees in the instant matter.

[3] See 134 La. at page 1097, 64 So. at page 920, where it is stated: "Plaintiff claimed the fee of attorney and punitory damages; * * *".