## HEMENWAY, Inc., v. GUILLORY.
### No. 4853.

Court of Appeal of Louisiana. Second Circuit.
June 4, 1934.

58

Hawthorn, Stafford & Pitts, of Alexandria, and Joffrion & Bordelon, of Marksville, for appellant.

Couvillon & Couvillon, of Marksville, for appellee.

TALIAFERRO, Judge.

Plaintiff sued on a promissory note in its favor, alleged to have been executed, signed, and delivered by defendant, for the sum of $179, less a credit of $5, dated May 13, 1932, and payable as follows: $10 on the 13th day of June, July, and August, and the balance of $149 on the 13th day of September, with 8 per cent. per annum interest from maturity until paid, plus attorney's fees of 15 per cent. of the amount sued for. It is alleged that said note was given to represent the unpaid balance of the purchase price of a Norge electric refrigerator sold and delivered by plaintiff to defendant the day the note was executed.

Plaintiff further alleges that defendant was unable to read and write and that, in keeping with his custom, his name was subscribed to said note by his wife, in his presence and at his express direction, and therefore he is as fully bound for the payment of said note as if he had actually written his name thereon himself. A writ of sequestration was sued out, whereunder the refrigerator was seized by the sheriff. Plaintiff asks for recognition of its vendor's lien and privilege thereon.

Defendant denies emphatically that the note sued on was signed by him or his wife for him, or by her at his direction. He denies any knowledge of the note whatever. He admits that he cannot read and write and that when it is necessary for his signature to be affixed to any written instrument, he signs by mark, or, if convenient, his wife signs his name thereto at his request. By way of amplification of his defense, he says that plaintiff's agents called at his home in Bunkie, 35 miles from Alexandria, where plaintiff's business is located, and endeavored to induce him to purchase said refrigerator, but he declined to do so; that said agents, at his suggestion, agreed to place the refrigerator in his home on a 30-day free trial, the same being delivered about midevening of May 13, 1932; that it was understood and agreed at the expiration of said trial period defendant was to determine if he wished to purchase the refrigerator or not, and that on or before said time expired he decided he did not wish to purchase it and so notified plaintiff by letter sent by registered mail; that the price thereof was $189; and that he paid to said agents $10 as a sort of deposit on the agreement, which, it was understood, was to be refunded to him should he not purchase the refrigerator. He further alleges that said agents agreed to take his old ice box, if he decided to purchase the refrigerator, and allow him $5 therefor, as a credit on the purchase price, but he declined to surrender same on that account before he had definitely decided whether he would buy the refrigerator; that, notwithstanding this understanding between them, the agents of plaintiff actually invaded his home and, over the protests of his wife, took into their possession said old ice box and delivered same to plaintiff.

Defendant further avers that in his illiteracy and lack of business experience he relied implicitly upon the declarations and agreement of plaintiff's agents and, for that reason, he has been fraudulently imposed upon. By way of reconvention, he sues plaintiff for $200 for mental distress, pain, embarrassment, and humiliation caused by the allegations of the petition to secure issuance of the writ of sequestration; and sues for $100 as attorney's fees necessary to defend this "illegal attempt to coerce him into a contract he never entered into." He also prays for judgment for the $10 he paid plaintiff's agents, and for return of the ice box taken from his home.

Plaintiff's demands were rejected; there was judgment against it for $10 and ordering it to return to defendant his old ice box or pay $5 to him therefor. The refrigerator was decreed to belong to plaintiff and not to have been bought by defendant. Plaintiff appealed from said judgment. Defendant has not answered the appeal.

■ Defendant having denied the genuineness of his signature on the note sued on, the burden devolved upon plaintiff to establish, if it could, that the disavowed signature is that of defendant, or placed thereon by his wife under his authority and with his knowledge. Code of Practice, art. 325; Fadaol v. Rideau, 13 La. App. 551, 128 So. 193; Watts v. Collier, 140 La. 99, 72 So. 822; Succession of Randazzo v. Ferrantelli, 130 La. 552, 58 So. 335.

■ If plaintiff has discharged this burden of proof, there will be no other issue in the case because, as declared by article 326 of the Code of Practice, when a defendant, sued on an act under private signature, denies the genuineness of his signature thereon and the verity of such signature is established, he "shall be barred from every other defense."

■ If defendant authorized his wife to affix

his signature to the note, it thereby became his own obligation with the same binding effect against him as it would have had had he signed it himself; and it would follow as a corollary that he did purchase the refrigerator, as contended by plaintiff, and that this note was given to represent the balance due on the price thereof.

Whether or not defendant's wife signed his name to the note, at his direction, is a question of fact to be determined from all the testimony in the case. We shall discuss this somewhat in detail, because of the seriousness of the challenge involved in defendant's allegations.

Plaintiff's collector, Mr. F. C. White, learned from a cousin of defendant, who owned a Norge refrigerator, and resided in Bunkie, that defendant had seen same in his home and was interested in acquiring one. Defendant thereafter became a "prospect." On May 13, 1932, plaintiff had in the town of Bunkie one or more of these refrigerators for exhibition and demonstration purposes. Mr. White and I. W. Jordan, plaintiff's salesman and manager of its refrigerator business, were present on this date, and at the noon hour when defendant was at home from his work went together to his home with the view of trying to close a sale with him. The matter was discussed between the two agents and defendant and his wife. Defendant wanted them to put the refrigerator in his home on a 30-day trial, but as plaintiff's rules forbade such being done, Jordan and White say this was not acceded to. Defendant and his wife are as equally positive that it was agreed to. White and Jordan say that an unconditional sale was closed with defendant, in his wife's presence, and he paid $10 on the price, leaving a balance of $179, for which the note was taken; that the note was then and there prepared for signing and handed to defendant who, stating he could not read and write, passed it on to his wife with the request that she sign it for him, which was done. They say that defendant stated he invariably paid cash for his purchases, but, as his bank in Bunkie was on a restricted basis, or closed, his account being frozen therein, he could not do so in this case; however, he thought his account would be fully released within 90 days and the note was so arranged that he could pay $10 thereon for the months of June, July, and August, and in September the balance of $149 would fall due. They also say that in view of this hoped for early payment of the note, it was drawn with interest from maturity and no chattel mortgage was taken to secure its payment. It

was understood, however, that if the note was not paid according to its tenor, it would be retired at the rate of $10 per month, and interest and carrying charges would be added. A receipt for the $10 cash paid was signed by White and delivered to defendant. It is stated therein that the amount was "to apply on a/c ... F. P." (meaning first payment). It contains this sentence also:

"In accepting this receipt I agree that payment shall apply to my account as a whole."

Defendant had no other account with plaintiff until the refrigerator was sold to him.

Jordan phoned to plaintiff that the sale had been made. The refrigerator was immediately sent down by truck and installed in defendant's home about midevening of that day. A sale sheet or invoice was made out by plaintiff, a copy of which was signed by Mrs. Guillory for defendant, when the machine was delivered to her, to evidence receipt thereof by her. This invoice, in view of the circumstances of the case, has some material bearing upon the good faith of defendant's position. It reads:

"Hemenway, Inc., Alexandria, La.
"Salesman: White & Jordan.
"(This sale not complete until notes are signed.)
"Sold to Shelby Guillory, Bunkie, La.
1    J. P. 5—Norge Refrigerator.....$189.00
Recipe Book ... Vegetable Pan.
Unit #303719 ... Cabinet #303536.
"[Signed] Shelby Guillory."

Presumably the original of this paper was mailed or delivered to defendant or his wife, but the record does not affirmatively disclose this fact.

Jordan and White further say that they agreed to take defendant's old ice box off of his hands and allow a credit of $5 on the note, but did not remove it that day because it was full of milk and other edibles, and it would require several hours to chill the new machine. White and another employee called for the old ice box about ten days thereafter. Defendant was not at his home, but his wife was. We are convinced she offered no objection to the box's removal. The new machine was then in use and no complaint was made as to its lack of efficiency. Defendant testified that he told his wife two or three days before the old box was removed to notify White to come and get the new machine, yet they continued to use it and she allowed the taking of the old box thereafter, without protest. Defendant, who felicitates himself on the fact that he never tells an untruth, a

commendable virtue, testified that he had as much as $500 in cash in his home on May 13, 1932, and could have paid the entire price of the refrigerator, had he purchased same; and when asked why he told Jordan and White that all his money was frozen in the bank and for that reason requested terms on the sale, replied, "I told them but it was in way of self-defense. I didn't want to take the box." Yet he says he did take it on trial and at his own suggestion.

There is in the record three admitted specimens of defendant's signature written by Mrs. Guillory; one is on the invoice, above referred to, another is on the letter written plaintiff to remove the refrigerator, while the third is on a signature card at a bank in Bunkie in June, 1924. We have closely scrutinized and compared all these signatures in connection with the one on the note sued on. The signature on the copy of invoice, for all practical purposes, is identical in appearance, letter formation and characteristics, with that on the note. There are some minor dissimilarities between the signature on the note and that to the letter, but these are not material differences. It is our opinion that Mrs. Guillory signed her husband's name to the note sued on and that she did so at the time, place, and under the circumstances related by the witnesses, White and Jordan. Two bankers of Marksville, La., whose experience in closely scrutinizing signatures on checks passing through their banks extended over several years, testified that it was their belief and opinion that the signatures on the note, copy of invoice, and letter, were all written by the same person; that as bankers they would accept the signatures on the copy of invoice and the letter as being written by the person who signed the note, and vice versa.

A significant fact in the case is that, while defendant called the vice president of the bank where he kept his account, as a character witness, and who doubtless was well acquainted with Mrs. Guillory's writing, he was not asked to give testimony as to whether the signature on the note in question was in the handwriting of Mrs. Guillory or not. No witness of defendant was interrogated on this subject, except his wife.

Plaintiff contends that the motive for defendant and his wife desiring to recede from their bargain with it lies in the fact that, while the refrigerator was in their possession, an agent of another firm handling refrigerators of a different manufacturer interested them in buying one from him at a reduced price. It is true that defendant did buy a machine from this agent at a price much less than he agreed to pay plaintiff, and that, too, after he had declared to White and Jordan on June 13th, that he did not want an electric refrigerator, but did want a new ice box, and was willing to pay in cash the difference between the price of one and the $10 he had paid on the refrigerator.

It has been proved that defendant is a hard-working man, frugal, though illiterate, and of a good reputation in all respects, especially for debt paying. These good qualities are urged as reasons why he should not want to repudiate an honest obligation. Testimony of this character in very close cases may often serve to turn the scales in favor of the one in whose behalf it is offered, but we do not think, in this case, its weight sufficient to do so. On the other hand, the reputation of Jordan and White for fair dealing and trustworthiness is established. They have held positions of trust with plaintiff, an old and highly reputable firm, for several years. To sustain defendant's contention we would have to say that these two agents have committed the abominable crime of forgery and uttering as true a forged instrument. We can sustain plaintiff's allegations and not convict defendant and his wife of willful perjury. It is possible they have forgotten the true terms of the contract with plaintiff and believe they are telling the truth about it.

For the reasons assigned, the judgment of the lower court is annulled, avoided, and reversed; and there is now judgment in favor of plaintiff, Hemenway, Inc., and against defendant, Shelby Guillory, for the sum of $174, with 8 per cent. per annum interest from September 13, 1932, until paid, and for the additional sum of 15 per cent. of the amount due plaintiff on the note sued on when this suit was filed, as attorney's fees; and for all costs.

It is further ordered, adjudged, and decreed that the writ of sequestration sued out herein be and the same is hereby recognized, maintained, and rendered executory on the Norge refrigerator seized thereunder and described in plaintiff's petition; and that same be seized and sold, according to law, to pay and satisfy this judgment.